UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re COMVERSE TECHNOLOGY, INC.:

Securities Litigation.                      **MEMORANDUM & ORDER**
----------------------------------------------------------X
This Document Relates To:               06-CV-1825 (NGG) (RER)

      ALL ACTIONS.
----------------------------------------------------------X

**RAMON E. REYES, JR., United States Magistrate Judge:**

      Before the Court are three competing motions for the appointment of lead plaintiff and lead counsel in this consolidated action under the Private Securities Litigation Reform Act ("PSLRA") of 1995, Pub. L. 104-67, 109 Stat. 737 (1995). Plumbers and Pipefitters National Pension Fund ("P&P") seeks to be appointed lead plaintiff, and to have their counsel, Lerach Coughlin Stoia Geller Rudman & Robbins LLP ("Lerach Coughlin"), appointed as lead counsel. Leumi-Pia Trust Fund Managment Co. Ltd. ("Leumi-Pia") and Doris, Jacques, and Roger Gould (the "Goulds") seek lead plaintiff status, and for their counsel, Labaton Sucharow & Fudoff LLP and Paskowitz & Associates ("Labaton/Paskowitz"), to be appointed as co-lead counsel. Menorah Insurance Co. Ltd. and Mivitachim Pension Funds Ltd. (collectively, the "Menorah Group"), also seek lead plaintiff status and to have their counsel, Pomerantz Haudek Block Grossman & Gross LLP ("Pomerantz Haudek"), appointed as lead counsel. For the reasons which follow, P&P and Lerach Couglin are appointed to lead this consolidated action.

# DISCUSSION[1]

I. Appointment of Lead Plaintiff

    A. Procedure under the PSLRA

With respect to the appointment of lead plaintiff, the PSLRA requires that the court "shall appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be the most capable of adequately representing the interests of class members. . ." *See* 15 U.S.C. § 78u-4(a)(3)(B)(i). In making this determination, the court is guided by the "rebuttable presumption . . . that the most adequate plaintiff . . . is the person or group of persons that-(aa) has either filed the complaint or made a motion in response to a notice [that is published no later than twenty days after the complaint is filed] . . .; (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted "only upon proof by a member of the purported plaintiff class that the presumptively most adequate plaintiff- (aa) will not fairly and adequately protect the interests of the class; or (bb) is subject to unique defenses that render such plaintiff incapable of adequately representing the class." *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

The PSLRA does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest." Since the PSLRA was enacted, however, the courts have developed a four-factor test in which the following are considered: (1) the number of shares purchased during the class period; (2) the number of shares retained at the end of the class

---

[1] Familiarity on the part of the reader is assumed with respect to the factual allegations and claims to relief in this consolidated action.

period; (3) the total net funds expended during the class period; and (4) the approximate loss suffered during the class period. *In re Olsten Corp. Sec. Litig.,* 3 F. Supp. 2d 286, 296 (E.D.N.Y. 1998) (citing *Lax v. First Merchants Acceptance Corp.*, No. 97-CV-2715,1997 WL 461036, at *5 (N.D. Ill. Aug.11, 1997). Most courts consider approximate loss suffered during the class period to be the most important factor. *E.g., Weiss v. Friedman*, No. 05 Civ. 4617 (RJH), 2006 WL 197036, * 3 (S.D.N.Y. Jan. 25, 2006); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 510-11 (E.D. Pa. 2004).

    B.    <u>Application to the Present Motions</u>

        1.    <u>Timely Filed Motion</u>

It is undisputed that each proposed lead plaintiff has filed their motion within 60 days of the notice required by the PSLRA. 15 U.S.C. § 78u-4(a)(3)(A)(i)(II). Thus, the three movants have satisfied the first requirement for determining the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). This provision, therefore, does not assist the court in making its determination of whom should be appointed lead plaintiff for the consolidated class action.

        2.    <u>Largest Financial Interest</u>

With one significant exception discussed below, the application of the four-factor test is not in serious dispute, and can be summarized by the following table:

| Movant | Shares Purchased | Shares Retained | Net Funds Expended | Approximate FIFO Loss | Approximate LIFO Loss[2] |
|---|---|---|---|---|---|
| P&P | 534,471 | 172,156 | $6,787,210.50 | $2,933,643.21 | $2,933,643.21 |
| Leumi-Pia/ Goulds | 176,740 | 86,840 | $2,365,911.23 | $506,895.18 | $404,262.60 |
| Menorah Group | 172,500 | 172,500 | $4,203,752.50 | $343,202.50 | $343,202.50 |

As shown above, P&P has the greatest financial interest as measured by three of the four factors – shares purchased, net funds expended, and approximate loss, and is in a virtual tie with the Menorah Group in the fourth – shares retained. Thus, application of the four-factor test indicates that P&P has the largest financial interest.

Relying on *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005) and its progeny, the Menorah Group argues, however, that P&P's and Leumi-Pia's approximate losses are vastly overstated because they include "in-and-out" transactions during the class period – purchases and sales of stock that precede any corrective disclosure to the market[3] – and that when such transactions are excluded from these plaintiffs' loss calculations, the Menorah Group becomes

---

[2] The courts are split as to whether approximate loss should be measured using the "first-in, first out" ("FIFO") or "last-in, last out" ("LIFO") accounting methods. *See, e.g., In re Veeco Instruments, Inc. Sec. Litig.*, 233 F.R.D. 330, (2005) (adopting FIFO method); *In re eSeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 100-101 (S.D.N.Y. 2005) (discussing cases and adopting LIFO method). In this case it makes little differences as P&P has the largest loss whichever method is used.

[3] "In-and-out" transaction are purchases and sales of shares that occur during the class period, but before the corporation makes a corrective disclosure. *E.g., Montoya v. Mamma.com Inc.,* Lead No. 05 Civ. 2313 (HB), 2005 WL 1278097, at *2 (S.D.N.Y. 2005).

4

the party with the greatest approximate losses.[4]  The Menorah Group's reliance on *Dura* is misplaced.

In *Dura,* the plaintiffs brought a securities fraud action alleging that certain officers and directors had made misleading public statements about, *inter alia,* the company's drug profits. 544 U.S. at 339.  The plaintiffs alleged economic loss based *solely* upon paying artificially inflated prices for Dura securities during the relevant period.  *Id.* at 339-40.  That is, plaintiffs did not allege that any "corrective disclosure" later caused the stock price to decline.  After the district court dismissed the complaint, the Ninth Circuit reversed, ruling that the plaintiffs could prove economic loss simply by showing that they had paid artificially inflated stock prices.  544 U.S. at 339.  The Supreme Court rejected the Ninth Circuit's "inflated purchase price" standard, and explained that loss causation cannot be proved merely by establishing that the defendants' misconduct artificially inflated the price of the target company's stock on the date of purchase. *Id.* at 342.  The Court held that in order to recover in a fraud-on-the-market case a plaintiff must also prove that the company's stock price later declined because the misconduct was disclosed to the public.  *Id.* at 346 (plaintiff must prove that "the defendant's misrepresentation (or other fraudulent conduct) proximately caused the plaintiff's economic loss.").[5]

---

[4]  As an integral part of the Menorah Group's argument that it has the largest approximate loss, it contends that the Goulds improperly calculated their approximate losses by not applying 15 U.S.C. § 78u-4(e)(2) – the PSLRA's formula for limiting damages to "the difference between the purchase . . . price paid . . . by the plaintiff for the security and the mean trading price of the security during the period beginning immediately after the dissemination of information correting the misstatement or omission and ending on the date on which the plaintiff sells . . . the security."  Because I reject the Menorah Group's *Dura* argument, and find that P&P has the largest financial interest, I need not reach this aspect of the Menorah Group's argument.

[5]  The Court also held that the plaintiffs, by alleging in the amended complaint only that the stock prices were inflated on the day that they were purchased, had failed adequately to allege

5

Although *Dura* makes clear that in fraud-on-the-market cases such as this, plaintiffs cannot prove loss causation simply by asserting that they purchased the security at issue at an artificially inflated price, the Supreme Court expressly refused to formulate precise standards for proving loss causation, despite a request to do so by Dura and the Solicitor General. *Id.* at 346 ("We need not, and do not, consider other proximate cause or loss related questions.").[6] Significantly, *Dura* did not address what type of events or disclosures may reveal the truth about a prior misrepresentation. Nor did *Dura* explain how specific corrective disclosures must be. *See Ryan v. Flowserve Corp.*, – F. Supp. 2d –, 2006 WL 2079333, * 8 (N.D. Tex. June. 9, 2006 (citing *In re Winstar Comm.*, No. 01-CV-3014, 2006 WL 473885, *13-15 (S.D.N.Y. Feb. 27, 2006); *In re Worldcom, Inc. Sec. Litig.*, No. , 2005 WL 2319118, *23 (S.D.N.Y. Sept. 21, 2005)).[7] Thus, *Dura* decided a narrow issue – a plaintiff in a fraud-on-the-market case cannot prove loss causation simply by reference to the purchase of securities at an inflated price. It did

---

a theory of economic loss and loss causation. *Id*. Here there is no question that plaintiffs do not rely on the "inflated purchase price" theory, as they have alleged two "corrective disclosures" were made.

[6] *See* Patrick J. Coughlin, Eric Alan Isaacson, and Joseph D. Daley, *What's Brewing in Dura v. Broudo? The Plaintiffs' Attorneys Review The Supreme Court's Opinion and Its Import for Securities Fraud Litigation,* 37 Loy. U. Chi. L.J. 1 (Fall 2005), in which the authors conclude that the Supreme Court expressly declined Dura's and the Solicitor General's requests to require that a stock's price decline be directly tied to a corrective disclosure for a plaintiff to recover. *Id.* at 15-16, 21-22 & n. 104; *accord* Evan R. Chesler and J. Stephen Beke, *Loss Causation Post-Dura,* 1517 PLI/Corp 1277, 1280 n.9 & 10 (Nov. 2005).

[7] In fact, *Dura* "left the lower federal courts free to continue to develop somewhat diverse approaches to the pleading of corrective disclosures preceding economic losses." Chesler & Beke, *Loss Causation Post-Dura*, at 1282.

not establish any other specific rules,[8] let alone rules that must be applied in deciding whom should be appointed lead plaintiff.

While a few courts have extended *Dura*'s holding to the lead plaintiff stage and excluded shares that were sold before any corrective disclosure had been made from the "largest financial interest" calculation, the bulk of those courts have done so where the proposed lead plaintiff sold *all* of its shares prior to public disclosure.[9] Here, it is undisputed that P&P did not sell all of its Comverse stock prior to the public disclosures listed in the complaint. In any event, the Menorah Group's rationale for extending *Dura* to the lead plaintiff stage is based on the faulty premise that loss causation must be pled with particularity, and that a court must conduct a loss causation analysis based solely on the allegations in the complaint. "Disputes about loss causation turn primarily on questions of fact." *See In re Tyco Int'l Ltd. MDL*, 236 F.R.D. 62, 71 (D.N.H. 2006)

---

[8] *E.g. Freeland v. Iridium World Communications, Ltd.*, 233 F.R.D. 40, 47 & n. 9 (D.D.C. 2006) (recognizing limitation of *Dura*'s holding) (citing *In re GeoPharma, Inc. Sec. Litig.*, 399 F. Supp. 2d 432 (S.D.N.Y. 2005); *In re Lowen Group, Inc. Sec. Litig.*, 395 F. Supp. 2d 211 (E.D. Pa. 2005); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d 278 (S.D.N.Y. 2005); *Stumpf v. Garvey*, No. 02-MDL-1335-PB, 2005 WL 2127674 (D. N.H. Sept. 2, 2005); *In re OmniVision Techs., Inc.*, C-04-2297 SC, 2005 WL 1867717 (N.D. Cal. July 29, 2005)).

[9] *In re Veeco Instr., Inc. Sec. Litig.*, 233 F.R.D. 330, 333-34 (S.D.N.Y. 2005) (in dicta, applying *Dura* to decision on appointment of lead plaintiff where proposed plaintiff sold all shares prior to public disclosure of fraud); *Brooks v. Interlink Elec., Inc.*, No. 05-CV-8133, slip op. at 1 (C.D. Cal. July 14, 2006) (same); *Stengle v. American Italian Pasta Co.*, No. 05-CV-0725, slip op. at 13-14 (W.D. Mo. Dec. 19, 2005) (same); *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 379 (E.D. Va. 2003) (pre-*Dura* decision denying motion of proposed lead plaintiff who sold all shares prior to public disclosure of fraud); *but see Topaz Realty v. Northfield Labs., Inc.,* No. 06-C-1493, slip op. at 7 (N.D. Ill. June 19, 2006); *Kops v. NVE Corp.*, No. 06-CV-574, 2006 U.S. Dist. LEXIS 49713, * 13-14 (D. Minn. July 17, 2006) (applying *Dura's* limitation to proposed lead plaintiff who sold some shares prior to disclosure); *In re McKeeson HBOC, Inc. Sec. Litig.*, 97 F. Supp. 2d 993, 997-98 (N.D. Cal. 1999) (pre-*Dura* decision denying motion of proposed lead plaintiff who sold some shares prior to public disclosure of fraud).

(citing *Wortley v. Camplin,* 333 F.3d 284, 295 (1st Cir. 2003)). Neither Federal Rule of Civil Procedure 9(b) nor the PSLRA, however, require that loss causation be pled with specificity. *Dura*, 544 U.S. at 347. Instead, the complaint need only "provide a defendant with some indication of the loss and the causal connection that the plaintiff has in mind." *Id.* The plaintiffs here have satisfied this requirement by pleading that their claimed losses were caused by at least two corrective disclosures. That certain corrective disclosures are specifically identified in the complaint does not preclude the later identification of additional disclosures or other events which may have caused the "relevant truth [about the fraud] to leak out." *Dura*, 544 U.S. at 342. Thus, it is simply too early in the litigation to exclude from the Court's "largest financial interest" calculation losses that may have been caused by corrective disclosures or other events that have not yet been specifically identified.[10] Accordingly, I reject the Menorah Group's

---

[10] *See In re Tyco Int'l Ltd. MDL*, 236 F.R.D. at 71 (rejecting *Dura* argument in context of PSLRA motion for class certification); *In re NTL, Inc. Sec. Litig.*, No. 02 Civ. 3013 (LAK) (AJP), 2006 WL 568225 (S.D.N.Y. Mar 09, 2006), *adopting* 2006 WL 330113, * 9 (S.D.N.Y. Feb. 14, 2006) (analyzing *Dura* and appointing "in-and-out" purchasers as class representatives in PSLRA action); *Weiss*, 2006 WL 197036, at *5 (rejecting *Dura* argument in context of PSLRA motion for class certification); *In re Bearingpoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 543-44(E.D.Va. 2006) (same); *In re Sierra Wireless, Inc. Sec. Litig.*, No. 05-MD-1696, Trans. of Oral Argument at 17:8-10 (S.D.N.Y. Dec. 2, 2005) (stating that *Dura* not an issue in motion to appoint lead plaintiff stage); *In re Watchguard Sec. Litig.*, No. C05-678JLR, 2005 U.S. Dist. LEXIS 40923, * (D. Wash. July 13, 2005) (rejecting *Dura* argument in context of selecting lead plaintiff); *Montoya v. Mamma.com*, No. 05 Civ. 2313, 2005 WL 1278097, * 2 (S.D.N.Y. May 31, 2005) (appointing "in-and-out" purchaser as lead plaintiff notwithstanding *Dura*); *In re Sipex Corp. Sec. Litig.*, NO C 05-00392 (WHA), Order at 8 (N.D. Cal. May 24, 2005) (discussing *Dura* and finding, "[t]here is a plausible chance that Globis will have no net recovery. This is not yet certain . . . because the necessary calculations are unknowable at this early stage. . . For the time being, Globis has a sufficient stake to be appointed as one of two lead plaintiffs."); *see also In re Cardinal Health Inc. Sec. Litig.*, 426 F. Supp. 2d 688, 760 (S.D. Ohio 2006 (collecting cases, and rejecting contention that loss causation can only be triggered by corrective disclosure); *Brumbaugh v. Wave Systems Corp.*, 416 F. Supp. 2d 239, 256 (D. Mass. 2006) ("*Dura* does not require that a corrective disclosure precede a stock's decline."); *In re Parmalat Sec. Litig.*, 375 F. Supp. 2d at 305-06 (rejecting argument that to be compensable loss must necessarily be preceded

argument, decline to follow those courts that have extended *Dura's* holding to the preliminary stages of a PSLRA action, and find that P&P has the largest financial interest.

### 3. Requirements of Rule 23 are Satisfied

The Rule 23(a) prerequisites to a class action state that

> [o]ne or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) *the representative parties will fairly and adequately protect the interests of the class*.

Fed. R. Civ. P. 23(a) (emphasis added). The Rule 23 inquiry under § 78u-4(a)(3)(B)(iii)(I)(cc) is "less stringent than the inquiry the rule otherwise requires." *In re Crayfish Co. Sec. Litig.*, No. 00 Civ. 6766, 2002 WL 1268013, *4 (S.D.N.Y. June 6, 2002) (citing *In re Party City Sec. Litig.*, 189 F.R.D. 91, 106 (D.N.J. 1999)). This is because "[a] wide-ranging analysis under Rule 23 is not appropriate [at this initial stage of the litigation] and should be left for consideration of a motion for class certification." *In re Party City*, 189 F.R.D. at 106 (citing *Fischler v. AMSouth Bancorporation*, No. 96-1567-Civ, 1997 WL 118429, at * 2 (M.D. Fla. Feb. 6, 1997)). Indeed, "[a]t this stage in the litigation, one need only make a 'preliminary showing' that the Rule's typicality and adequacy requirements have been satisfied." *In re Crayfish Co.*, 2002 WL 1268013, *4 (citing *In re Olsten Corp. Sec. Litig.*, 3 F. Supp. 2d at 296). It should be noted, however, that any preliminary class certification findings of typicality and adequacy for the

---

by corrective disclosure); *Laborers Local 1298 Pension Fund v. Campbell Soup Co.*, No. 00-CV-152, 2000 U.S. Dist. LEXIS 5481 (D.N.J. Apr. 24, 2000) (pre-*Dura* decision recognizing argument against "in-and-out" purchasers, but nevertheless appointing as lead plaintiff movant who sold all shares during class period); *In re Dynegy, Inc. Sec. Litig.*, 226 F.R.D. 263, 277 (S.D. Tex. 2004 (same).

9

purposes of appointing a lead plaintiff will not preclude any party from contesting the ultimate class certification in the future. *See Weltz v. Lee*, 199 F.R.D. 129, 133-34 (S.D.N.Y. 2001) ("Notably, [ ], because [the PSLRA] only requires preliminary class certification findings, the Court does not preclude any party from contesting the ultimate class certification on the basis of the determinations made in the instant petition."); *see also Koppel v. 4987 Corp.*, Nos. 96 Civ. 7570, 97 Civ. 1754 (RLC), 1999 WL 608783, at * 8 (S.D.N.Y. Aug. 11, 1999) ("such a finding does not prejudice defendants' capacity to contest plaintiff's adequacy on a motion for class certification.").

i.  Typicality

Rule 23(a)(3) "typicality" is satisfied when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability. *See In re Drexel Burnham Lambert Group, Inc.*, 960 F.2d 285, 291 (2d Cir. 1992). *See also Dura-Bilt Corp. v. Chase Manhattan Corp.*, 89 F.R.D. 87, 99 (S.D.N.Y. 1981) (the typicality requirement is met "if it arises from the same event or course of conduct that gives rise to claims of other class members and the claims are based on the same legal theory"). This rule "does not require that the factual background of the named plaintiff's case be identical with that of other members of the class, but that the disputed issue occupy essentially the same degree of centrality to the named plaintiff's claim as to that of other members of their purported class." *Burka v. New York City Transit Auth.*, 110 F.R.D. 595, 604-05 (S.D.N.Y. 1986).

P&P's claims are clearly typical of those of the proposed class. Like all other proposed class members, P&P bought Comverse stock during the relevant period and claims to have been damaged thereby. No party seriously disputes P&P's typicality; nor have defendants opposed

10

this motion. Consequently, based on the information currently available to the Court, P&P satisfies the typicality requirement of Rule 23(a) for purposes of the lead plaintiff inquiry.

ii. Adequacy

There are two elements the court must consider when determining adequacy under the third prong of the PSLRA: (1) whether there is a potential conflict between the named plaintiffs and the absent class members, and (2) whether there will be vigorous prosecution of the action by the representative party, which requires that the party's attorney be qualified, experienced, and generally capable of conducting the litigation. *See Garfinkel v. Memory Metals, Inc.*, 695 F. Supp. 1397, 1405 (D. Conn. 1988); *Walsh v. Northrop Grumman Corp.*, 162 F.R.D. 440, 447 (E.D.N.Y. 1995) (citing *Dura-Bilt*, 89 F.R.D. at 101).

No party has raised a potential conflict between P&P and the absent class members. Additionally, other courts have recognized P&P's counsel, Lerach Coughlin, for its high quality legal representation. *E.g., In re Enron Corp. Sec. Litig.*, 206 F.R.D. 427, 458 (S. D. Tex. 2002); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998); *In re Prudential Securities Limited Partnerships Litig.*, 912 F. Supp. 97, 101 (S.D.N.Y. 1996). Since it is a trend in this district "to assess the adequacy of the representative's attorney rather than the personal qualifications of the named plaintiff," *Garfinkel*, 695 F. Supp. at 1405 (quoting *Klein v. A.G. Becker Paribas Inc.*, 109 F.R.D. 646, 651 (S.D.N.Y. 1986)), and since a review of the firm's résumé indicates that it is well versed in this type of securities litigation, this Court finds that the law firm of Lerach Coughlin is sufficiently adequate counsel and will provide "vigorous representation" for the class. Furthermore, no party has raised a serious issue of "antagonism"

between class members. Thus, this Court finds that P&P satisfies the adequacy prong of Rule 23(a) required under the PSLRA and is thereby the most adequate lead plaintiff.

    4. <u>Presumption Not Rebutted</u>

P&P has made a prima facie showing that it satisfies the requirements of Rule 23, and is therefore entitled to a rebuttable presumption that it should be appointed lead plaintiff. Cross movants make two arguments to rebut the presumption. Neither argument is persuasive.

The Menorah Group argues that based on *Dura*, P&P is subject as an "in-and-out" trader to the *unique* defense that it cannot prove loss causation, and therefore it is "ill suited for service as a class representative." As discussed above, the Menorah Group's loss causation arguments based on *Dura* are unconvincing at this stage of the proceedings. Moreover, as the proposed class includes all purchasers of Comverse stock during the relevant period, there will undoubtedly be many "in-and-out" traders in the class, and therefore P&P is not in a unique position. *E.g., Weiss*, 2006 WL 197036, at *5 ("[E]ven if defendants were to subject plaintiffs . . . to a challenge on the inability to prove loss causation, such a defense surely cannot be described as unique."); *Freeland*, 233 F.R.D. at 48-49 (potential inability to prove loss causation is not unique defense rendering lead plaintiff an inadequate representative); *see also In re Rent-Way Sec. Litig.*, 218 F.R.D. 101, 119 (W.D. Pa. 2003) ("The problems presented by 'in and out sellers' are bound to inhere in any securities action alleging a fraud on an open securities market. This is all the more true in cases such as this one where the alleged fraudulent scheme was of longer duration and/or involved a multiplicity of alleged misrepresentations."). Indeed, the Menorah Group accuses cross movant Leumi-Pia of being an "in-and-out" trader in precisely the

same position as P&P, thereby undercutting its own argument that P&P is subject to "unique" defenses.

Leumi-Pia and the Goulds argue that P&P is a "professional plaintiff" and should be barred from serving as lead plaintiff pursuant to the PSLRA's 5-in-3 rule. *See* 15 U.S.C. § 78u-4(a)(3)(B)(vi) ("Except as the court may otherwise permit, consistent with the purposes of this section, a person may be lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions . . . during any 3-year period"). Leumi-Pia and the Goulds point out that P&P has served as a lead plaintiff in 11 securities class actions during the past three years, five of which they claim are currently active.[11] The 5-in-3 rule, however, is clearly discretionary. *Id.* ("*Except as the court may otherwise permit*, . . .") (emphasis added). More importantly, the PSLRA's legislative history demonstrates a clear congressional preference to exempt institutional investors such as P&P from the 5-in-3 rule:

> The Conference Report seeks to restrict professional plaintiffs from serving as lead plaintiffs by limiting a person from serving in that capacity more than five times in three years. *Institutional investors seeking to serve as lead plaintiff may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict.* As a result, the Conference Committee

---

[11] Leumi-Pia and the Goulds also argue that P&P's certification pursuant to 15 U.S.C. § 78-u4(a)(2)(A)(v) is deficient because it fails to list nine cases in which P&P *served* as lead plaintiff within the last three years, three of which are currently active. This argument misconstrues the requirements of the statue, which clearly provides that a proposed lead plaintiff need only list on its certification "any other action . . . *filed* during the 3-year period . . . in which the plaintiff has sought to serve as a representative" of the class. *Id.* According to P&P, each of the nine cases which Leumi-Pia and the Goulds claim were improperly omitted from its certification were filed more than three years ago, and that of the nine only three are "still actively pending." Given that the nine cases were not "filed" during the three-year period, whether or not they are "actively pending," the plain words of the statute do not require that they be listed on P&P's certification.

grants courts discretion to avoid the unintended consequences of disqualifying institutional investors from serving more than five times in three years.

H.R. Conf. Rep. No. 104-369, at 35 (1995), *reprinted in* 1995 U.S.C.A.A.N. 730, 733 (emphasis added). I have considered Leumi-Pia's and the Gould's other arguments in this regard and find them to be unpersuasive.[12]

Accordingly, the cross movants have not rebutted the presumption that P&P should be appointed lead plaintiff in this consolidated class action.

III.  Selection of Lead Counsel

As for the selection of lead counsel, the PSLRA states that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class." 15 U.S.C. § 78u-4(a)(3)(B)(v). P&P has selected Lerach Coughlin to serve as lead counsel. The firm's resume indicates that it has successfully prosecuted numerous securities fraud class actions in state and federal court, and is otherwise well qualified and free of conflicts. Thus, as have other courts, this Court appoints Lerach Coughlin as lead counsel to prosecute this securities class action. *E.g., Vanamringe v. Royal Group Tech. Ltd.*, 237 F.R.D. 55, 58 (S.D.N.Y. 2006); *Kemp v. Universal American Financial Corp.*, Nos. 05 Civ. 9883 (JFK), 06 Civ. 871 (JFK), 2006 WL 1190691, *3 (S.D.N.Y. May 1, 2006); *In re Doral Financial Group Sec. Litig.*, 414 F. Supp. 2d 398, 403 (S.D.N.Y. 2006).

---

[12] I specifically reject Leumi-Pia's and the Gould's call for discovery into the issue of P&P's adequacy to serve as lead plaintiff based upon its "failure to mention three cases in which it is currently serving as lead plaintiff." As discussed above, 15 U.S.C. § 78-u4(a)(2)(A)(v) does not require P&P to list those cases on its certification. *Supra* note 11. Thus, contrary to Leumi-Pia's and the Gould's argument, there is no "'reasonable basis' warranting discovery limited into the issue of how many actions [P&P] is currently serving in and whether it has the resources necessary to fulfill its duties in additional cases."

## **CONCLUSION**

For the foregoing reasons, P&P's motion for appointment of lead plaintiff and counsel is granted. P&P is directed to file an amended consolidated complaint within forty-five (45) days of the date of this Memorandum and Order.

**SO ORDERED**

Dated: Brooklyn, New York
September 27, 2006

_____/S/_____
RAMON E. REYES, JR.
UNITED STATES MAGISTRATE JUDGE